IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00292-REB-MJW

TYRON DUANE SMALL,

Plaintiff(s),

v.

CANDANCE CROSLEY, Sgt.,
KEVIN CRUTCHER, Sgt., and
KYLE ROBERTS, Lt.,

Defendant(s).

---

**RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 75)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order Referring Case issued by Judge Robert E. Blackburn on March 5, 2013 (Docket No. 9).

**PLAINTIFF'S ALLEGATIONS**

The operative pleading is the Amended Prisoner Complaint (Docket No. 7), brought pursuant to 42 U.S.C. § 1983, in which the pro se incarcerated plaintiff alleges the following.  On October 10, 2012, defendants Sgt. Crosley and Sgt. Crutcher left plaintiff fully restrained while searching his cell after which, while his hands were still cuffed behind his back, they assaulted plaintiff.  They gave plaintiff a direct order, which plaintiff followed, yet plaintiff was thrown to the ground where Crutcher smashed plaintiff's head into the ground with his full body weight, and Crosley used unnecessary force upon plaintiff's back and wrist area by smashing the handcuffs back on plaintiff's

wrist and bending them down, causing abrasions.  Plaintiff repeatedly told both officers
on camera and ahead of time that he was not resisting and that they were hurting him
for no reason.  Plaintiff had no record for assaults on staff or other inmates.  Their
assault was intentional retaliation against plaintiff for cursing them out and being found
guilty of incident reports they had previously written.  Both officers claimed plaintiff
assaulted them, and they used force on plaintiff, but plaintiff was not charged criminally
or with a COPD (in-house incident report).  Both officers failed to report plaintiff's
injuries in their reports, but the nurses reported and documented injuries that were
visible to the officers.

Defendant Roberts was there and observed the incident, but he failed to
intervene and protect plaintiff from this assault.   DOC policy was not followed.  Such
policy states that if a situation seems to be out of control and the inmate is showing
traits of aggression or anger, the sergeant should request a shift commander or
someone at a level III or above be contacted to come see if more assistance is needed
or if he or she can resolve the situation.

Defendants violated plaintiff's Eighth and Fourteenth Amendment rights.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Discovery in this case is closed.  (See Scheduling Order, Docket No. 36).  Now
before the court for a report and recommendation is the Defendants' Motion for
Summary Judgment (Docket No. 75).  Plaintiff filed a Response (Docket No. 85).  The
court has carefully reviewed these motion papers and the video of the incident
submitted by defendants (see Docket No. 77) and which is also relied on by plaintiff as
part of his response to defendants' motion.  In addition, the court has considered
applicable Federal Rules of Civil Procedure and case law and has taken judicial notice

3

of the court file.  The court now being fully informed, makes the following findings, conclusions, and recommendation.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response."  Id.  "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist."  Id.; Robertson, 78 F. Supp.2d at

1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v.

York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be

based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for

summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should

not enter if, viewing the evidence in a light most favorable to the non-moving party and

drawing all reasonable inferences in that party's favor, a reasonable jury could return a

verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleading has been construed liberally

and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall

v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519,

520-21 (1972)).

**Official Capacity**

Defendants correctly assert that to the extent the plaintiff is suing them in their

official capacity for damages, they are entitled to immunity pursuant to the Eleventh

Amendment. It is well established that "neither a State nor its officials acting in their

official capacities are 'persons' under § 1983," Will v. Michigan Dept. of State Police,

491 U.S. 58, 71 (1989), and that "the Eleventh Amendment precludes a federal court

from assessing damages against state officials sued in their official capacities because

such suits are in essence suits against the state." Hunt v. Bennett, 17 F.3d 1263, 1267

(10th Cir. 1994). Therefore, to the extent that the plaintiff's claims against the

defendants are against them in their official capacities for monetary damages, such

relief is barred by the Eleventh Amendment, and summary judgment should enter for

the defendants on any such claims.

**Eighth Amendment Claim**

Physical Injury.  Defendants assert that plaintiff cannot recover compensatory

damages against defendants on his Eighth Amendment claim because there was no

physical injury.  The Prison Litigation Reform Act ("PLRA") provides in pertinent part that

"[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other

correctional facility, for mental or emotional injury suffered while in custody without a

prior showing of physical injury."  42 U.S.C. § 1997e(e).  The Tenth Circuit has held that

> [t]he plain language of the statute does not permit alteration of its clear
> damages restrictions on the basis of the underlying rights being asserted.
> The underlying substantive violation . . . should not be divorced from the
> resulting injury, such as "mental or emotional injury," thus avoiding the
> clear mandate of § 1997e(e).  The statute limits the remedies available,
> regardless of the rights asserted, if the only injuries are mental or
> emotional.

Searles v. VanBebber, 251 F.3d 869, 876 (10th Cir. 2001), cert. denied, 536 U.S. 904

(2002).  Defendants further assert that the injury must be more than *de minimis*, but

need not be "significant."  (Docket No. 75 at 10, citing Siglar v. Hightower, 112 F.3d 191

(5th Cir. 1997)).

Here, defendants note that Crosley, Roberts, and Brandt state in their affidavits

that they did not observe any physical injuries on plaintiff's person and that plaintiff did

not complain of any physical injuries at the time of the incident.  Moreover, they assert

nurse Lewis stated that she observed only minor scratches on plaintiff's wrists, with no

bleeding, and what appeared to be a slight nose injury.  (Defs.' Ex. L).  Defendants

contend that these "injuries" are comparable to those in other cases where courts found

that these types of injuries are *de minimis* and do not support a claim for compensatory

damages.

Plaintiff, however, indicates in his Response that he had migraine problems and

6

suffered a head injury during this incident, claiming his head was driven into the ground (see Docket No. 85 at 9, 12).  In addition, plaintiff points out that defendant Crutcher acknowledged that plaintiff said his head hurt.  (Docket No. 85 at 19).  Plaintiff also asserts that he suffered a wrist injury.  (Docket No. 85 at 7).  He claims Crosley intentionally twisted and pulled plaintiff's hand or the cuffs so hard that they cut into plaintiff's wrist.  Plaintiff also asserts that his medical history will show that he sustained an injury.  One of the documents attached to plaintiff's Response, which apparently was printed on October 30, 2012, is an "ACTIVE PROBLEM LIST," which includes lumbago, swelling of his right great toe, unspecified condition of his left third finger, and headache.  (Pl's Ex. C, Docket No. 85 at 13).  Another report dated March 16, 2013 (Docket No. 85 at 14), includes the objective finding of "Lower thoracic paravertetbral muscle spasm.  Lateral benign 50% of expected.  Flexion and extension 75% of expected. . . ." The assessment included "thoracic sprain and strain."  (Docket No. 85 at 14).  Furthermore, the Anatomical Form Completed immediately following the incident at issue includes a comment that "Offender reports 'my back & wrists hurt.'" (Docket No. 75-12).  Although it is also reported that no grimacing was noted and that plaintiff was ambulating within normal limits in the holding cell (Docket No. 75-12), there is no indication that a medical examination was actually performed rather than observations by the nurse of the plaintiff in the intake holding cell.  The nurse did report an area on plaintiff's right wrist that was slightly swollen and a "slight superficial" laceration on his left wrist.  (Docket No. 75-12).

Based on the above, this court finds that the plaintiff has adequately shown a physical injury sufficient to defeat the defendants' PLRA physical injury argument.

Qualified Immunity.  Defendants next assert plaintiff's Eighth Amendment claim

against them in their individual capacities fails as a matter of law because they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id.  "Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation."  Id.

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right."  Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  The Supreme Court has held that the federal courts have discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. at 236.  Here, defendants first address the first prong, asserting there is no evidence that they violated plaintiff's Eighth

8

Amendment right to be free from cruel and unusual punishment.

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to the scrutiny of the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citation omitted). "[C]laims of excessive force involving convicted prisoners arise under the Eighth Amendment." Estate of Booker v. Gomez, 745 F.3d 405, 419 (10th Cir. 2014). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amed. VIII. "An inmate making a direct challenge to conditions of confinement under the 8th Amendment, must show that, judged by contemporary standards of decency, the conditions either involve the wanton and unnecessary infliction of pain, that they are grossly disproportionate to the severity of the crime, or that they entail serious deprivation of basic human needs." Georgacarakos v. Wiley, 2010 WL 1291833, at *11 (D. Colo. Mar. 30, 2010) (internal quotation marks and citation omitted). "Prison officials must . . . take reasonable measures to guarantee those inmates' safety." Id. (citation omitted). "An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind." Matthews v. Wiley, 744 F. Supp.2d 1159, 1176 (D. Colo. 2010). "The subjective component follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id. (quotations omitted).

"[A]n inmate has a constitutional right to be secure in [his] bodily integrity and free from attack by prison guards." Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993). In addition, "a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation." Id. The "core judicial inquiry" concerns "the

9

nature of the force–specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm" "rather than in as part of a 'good faith effort to maintain or restore discipline.'" Wilkins v. Gaddy, 559 U.S. 34, 37, 40 (2010).  The extent of the inmate's injury is one factor in that analysis.  Green v. Denning, 465 Fed. Appx. 804, 807 (10th Cir. Mar. 9, 2012) (citing Wilkins, 559 U.S. at 40).

Here, defendants' evidence concerning the incident (including affidavits by the defendants) indicates that there was a need to apply the force given the threat perceived by the officers.  According to defendants, plaintiff initiated the use of force. The officers were attempting to escort him from the exercise room back to his cell after a cell search had been conducted.  Plaintiff was told to turn with his back to the exercise room door.  Instead, plaintiff turned around and attempted to force his way out of the door against the officer's orders.  A struggle then ensued.  Crosley and Crutcher attempted to keep plaintiff from exiting the exercise room out into the open.  Plaintiff's aggressive actions caused Crosley to be pinned between plaintiff and the wall.  Plaintiff continued to resist.  The officers allegedly had reason to feel threatened by plaintiff under these facts, and the officers' use of force was allegedly reasonable to restore order.  The officers did not intend to harm plaintiff.  They merely took him to the ground and held him into position as described in their affidavits and on the video. Furthermore, plaintiff's alleged injuries were *de minimus* at best.  According to defendants, there is no evidence of conduct on the part of defendant that rises to the level of a constitutional violation.

Plaintiff's evidence, namely, his statements based on his personal knowledge and made under oath (see Docket No. 85 at 11), accepted as true for purposes of defendants' motion, however, contradicts defendants' evidence and would not support a

10

finding that the force used was reasonable.  According to plaintiff, he complied with the

defendants' order.  His hands were cuffed behind his back before this incident even

started, and they were that way throughout the course of the incident.  He had no

history of violence.  Defendants maliciously and intentionally tried to hurt him.  He was

smashed into the ground, and he was screaming in pain.  After he was taken to the

ground and subdued, Crutcher assaulted plaintiff, and Crosley intentionally started

twisting and pulling plaintiff's hand or the cuffs so hard that they cut into plaintiff's wrist,

which was unnecessary since plaintiff was subdued and could not pose a threat to

anyone from the position he was in.  Rogers witnessed the incident but did not protect

plaintiff from harm.  He knew about the situation before plaintiff was moved from the

exercise room but did not do anything to diffuse the situation.

Furthermore, the court's review of the video of the incident, upon which both

plaintiff and defendants rely in support their respective positions regarding whether the

force used was excessive, does not conclusively resolve the factual dispute.  The video

is time lapsed.  The action takes place in the distance and inside the exercise room.

While the exercise room wall that faces the camera is comprised of floor-to-ceiling

windows, a lot of the action is obstructed by the solid door to the exercise room behind

which plaintiff was standing when the incident began, the window frames, and

individuals who later entered and crowded the small room.  In addition, there is no

audio.

This court thus <u>cannot</u> find that there is no genuine dispute as to any material

fact with respect to plaintiff's Eighth Amendment excessive force claim, and thus the

court cannot conclude at this point that the defendants are entitled to judgment as a

matter of law.  A factfinder should decide which version is more credible.  Therefore,

summary judgment should not enter for the defendants.

Given this finding and the fact that "an inmate's right to be free from cruel and unusual punishment, in the form of . . . a malicious and sadistic application of excessive force against him by prison guards, was clearly established prior to the date of this incident," Freeman v. Woolston, 2013 WL 1283813, at *3 (D. Colo. Mar. 28, 2013), plaintiff has met his burden of showing that defendants are not entitled to qualified immunity at this juncture.

The court notes, without deciding at this time, that even if plaintiff succeeds at trial on his claim, the apparently modest nature of his alleged injuries may very well limit the damages he may recover. Id.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion for Summary Judgment (Docket No. 75) be **GRANTED IN PART AND DENIED IN PART**. More specifically, it is recommended that the motion be granted to the extent that any claim for damages against the defendants in their official capacity be dismissed and that the motion be denied in all other respects.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the**

12

recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53

(1985), and also waives appellate review of both factual and legal questions.

<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>

<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:  June 9, 2014                                    s/ Michael J. Watanabe
        Denver, Colorado                             Michael J. Watanabe
                                                              United States Magistrate Judge